FREEMAN UNITED COAL MINING COMPANY, Plaintiff-Appellee and Cross-Appellant, *v.* THE FAIR EMPLOYMENT PRACTICES COMMISSION *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District   No. 82—32

Opinion filed March 2, 1983.

Don E. Prosser, of Kimmel, Huffman, Prosser & Kimmel, Ltd., of Carbondale, for appellants LaDonna Young and Linda Simpkins.

Tyrone C. Fahner, Attorney General, of Springfield (Kathleen M. Lien, Assistant Attorney General, of counsel), for appellant State of Illinois Fair Employment Practices Commission.

Don A. Banta and J. Kevin Hennessy, both of Naphin, Banta & Cox, of Chicago, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

The defendants, LaDonna Young, Linda Simpkins, and the Illinois Fair Employment Practices Commission (hereinafter referred to as the Commission) appeal from a final judgment of the circuit court of Franklin County affirming in part and reversing in part the Commission's order awarding backpay to the individual defendants. The plaintiff, Freeman United Coal Mining Company (hereinafter referred to as Freeman) has filed a cross-appeal asserting that the circuit court erred in affirming any portion of the Commission's order. We affirm in part and reverse in part.

On January 29, 1975, LaDonna Young and Linda Simpkins, both females, applied to Freeman for positions as miner trainees. At the time of their application it was Freeman's policy to exclude females from underground work, and consequently their applications were not considered at the time they were submitted. In January 1975 Freeman had no openings for miner trainees. In March and April of that year Freeman hired 12 male trainees, four of whom had applied before Young and Simpkins had. The remaining eight male applicants applied after the complainants had applied. Four of these possessed certain trade or craft skills which had proved to be of use in underground mining, and these applicants were therefore entitled to preferential consideration pursuant to Freeman's hiring policies. The re-

maining four males hired did not possess such trade or craft skills. When Young and Simpkins applied for mining positions, section 9.01 of the Coal Mining Act (Ill. Rev. Stat. 1973, ch. 93, par. 9.01) provided that "No boy under the age of 18 years, and no woman or girl of any age, shall be permitted to do any manual labor in or about any mine." (Current version at Ill. Rev. Stat. 1981, ch. 96½, par. 901.) In 1974, the Attorney General for the State of Illinois issued an opinion stating that coal companies could no longer rely on section 9.01 to exclude women from employment in or around the coal mines. In May of 1974 Freeman received written notice of the Attorney General's opinion from the director of the Department of Illinois Mines and Minerals. Freeman, however, adhered to its policy of excluding women from underground mine work. In August of 1975 Young and Simpkins were hired for underground word. In September 1975, section 9.01 was amended to delete the reference to disparate treatment according to sex. In October of 1975 Young and Simpkins began work as miner trainees.

Pursuant to charges filed by Young and Simpkins the Commission issued a complaint of unfair employment practices under section 3(a) of the Fair Employment Practices Act (Ill. Rev. Stat. 1973, ch. 48, par. 853(a), repealed 1980; current version at Ill. Rev. Stat. 1981, ch. 68, par. 2—102(A)) (hereinafter referred to as the FEPA). In 1975, at the time of the occurrences in question, the FEPA provided that:

"It is an unfair labor practice:

(a) For any employer, because of the race, color, religion, sex, national origin or ancestry of an individual to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment." (Ill. Rev. Stat. 1973, ch. 48, par. 853(a).)

The individual defendants alleged that Freeman had violated the FEPA. The hearing examiner agreed, made specific factual findings, and recommended an award of backpay. The Commission adopted the hearing examiner's findings and recommendation. On administrative review the circuit court affirmed the Commission's finding of discrimination but reversed the backpay award on the grounds that Freeman had demonstrated good faith reliance on the protective statute and that there was no evidence that that reliance was a pretext. Young, Simpkins, and the Commission appeal from the reversal of the backpay award, and Freeman appeals from the affirmance of the Commission's findings that Freeman had violated the FEPA.

The analysis of a discrimination claim under the FEPA is similar

to the analysis employed under title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000a *et seq.* (1976)). (*Board of Education v. Fair Employment Practices Com.* (1979), 79 Ill. App. 3d 446, 452, 398 N.E.2d 619; see *City of Cairo v. Fair Employment Practices Com.* (1974), 21 Ill. App. 3d 358, 363, 315 N.E.2d 344.) Under title VII, a three-step analysis of the allocation of the burden of proof was formulated by the United States Supreme Court in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. "That analysis may be summarized as follows: (1) the plaintiff must make out a prima facie case of discrimination; (2) at this point, the defendant assumes the burden of *producing* (as distinct from *proving*) a reason for its actions which is, on its face, legitimate and non-discriminatory; (3) it is then incumbent on the plaintiff to carry her continuing burden of *proof* that she was, in fact, a victim of sex discrimination." (Emphasis in original.) *Miller v. WFLI Radio Inc.* (6th Cir. 1982), 687 F.2d 136, 138.

■■ In its cross-appeal Freeman contends that the circuit court erred in affirming the Commission's finding of discrimination on Freeman's part in that the Commission applied an incorrect evidentiary standard and in that the finding of discrimination is not supported by the evidence. In a previous order the circuit court had reversed the Commission's findings of fact in this case because the Commission had applied a "clear and convincing" evidentiary standard. The Commission's order after remand applied the same "clear and convincing" evidentiary standard to the facts of the case. In an extended discussion in its written order, the Commission relied on many Federal cases as support for its position, despite the circuit court's reversal of its original order on this precise ground. We note initially that " '[a]fter a judgment is reversed and the cause is remanded the inferior tribunal can take only such further proceedings as conform to the judgment of the appellate tribunal.' " (*People v. Webb* (1982), 109 Ill. App. 3d 328, 331, 440 N.E.2d 406, quoting *Roggenbuck v. Breuhaus* (1928), 330 Ill. 294, 297-98, 161 N.E. 780.) We see no valid reason not to apply this principle to an administrative proceeding. Hence, the Commission's discussion of what it perceived as valid reasons for application of the "clear and convincing" standard was inappropriate. Moreover, the Commission erroneously placed on Freeman the burden of proving lack of discrimination. See *Board of Education v. Fair Employment Practices Com.* (1979), 79 Ill. App. 3d 446, 452-53.

A claim of employment discrimination can be brought under either the "disparate treatment" theory enunciated in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817,

or under the "disparate impact" theory of *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849. (See *International Brotherhood of Teamsters v. United States* (1977), 431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 415 n.15, 97 S. Ct. 1843, 1854 n.15.) Because Freeman's employment policy applied only to females, this case should be analyzed under the former rather than the latter theory. See *Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 575 n.7, 57 L. Ed. 2d 957, 966 n.7, 98 S. Ct. 2943, 2948 n.7.

■ Two distinct lines of subanalysis have been formulated under the disparate treatment rubric. Discrimination may be proved by establishing that the employer engaged in a "pattern or practice" of disparate treatment which was premised on unlawful considerations (see *International Brotherhood of Teamsters v. United States* (1977), 431 U.S. 324, 334-35, 52 L. Ed. 2d 396, 415, 97 S. Ct. 1843, 1854) or by showing individual acts of discrimination (*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 36 L. Ed. 2d 668, 677, 93 S. Ct. 1817, 1824). In the instant case Freeman's policy admittedly precluded women from obtaining mining jobs; we therefore need not engage in either of the subanalyses as the existence of the policy of discrimination was established. In *Franks v. Bowman Transportation Co.* (1976), 424 U.S. 747, 772, 47 L. Ed. 2d 444, 466, 96 S. Ct. 1251, 1267-68, the court held that proof of a policy of discrimination against a class creates a rebuttable presumption that individual class members were discriminated against.

> "The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. The Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination. As in Franks, the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." (*International Brotherhood of Teamsters v. United States* (1977), 431 U.S. 324, 362, 52 S. Ed. 2d 396, 431-32, 97 S. Ct. 1843, 1868.)

Young and Simpkins applied for jobs without success. Coupled with the discriminatory policy, this establishes a *prima facie* case of discrimination.

Proceeding to the second level of analysis under *Burdine*, Freeman contends that section 9.01 of the Coal Mining Act provides a legitimate and nondiscriminatory basis for failing to hire Young and Simpkins. In their appeal the defendants assert that the circuit court

erred in that (1) the record supports the Commission's finding that Freeman did not rely in good faith on section 9.01; (2) section 9.01 was not a valid law; (3) there was no real threat of prosecution under the statute; (4) an award of backpay is warranted despite good faith reliance on section 9.01; and (5) the record supports the Commission's finding that Freeman's alleged reliance was a pretext.

■ The defendants contend that the record supports the Commission's finding that Freeman did not rely on section 9.01 in good faith. The Commission raises the threshhold question of whether good faith reliance on a State protective statute can constitute a legitimate and nondiscriminatory reason for failing to hire the defendants. Where a Federal statute creates the right claimed to have been violated, reliance on a State protective statute has been held to be no defense. (*Stryker v. Register Publishing Co.* (D.C. Conn. 1976), 423 F. Supp. 476, 479-80, but see *Albermarle Paper Co. v. Moody* (1975), 422 U.S. 405, 448, 45 L. Ed. 2d 280, 315-16, 95 S. Ct. 2362, 2389 (Blackmun, J., concurring).) The rationale behind this rule apparently is the doctrine of Federal preemption, rooted in the supremacy clause of the United States Constitution. (See *Stryker v. Register Publishing Co.* (D.C. Conn. 1976), 423 F. Supp. 476, 479.) This doctrine is appropriately applied to resolve conflicts between a Federal statute and a State enactment. (See *Hutchcraft Van Service, Inc. v. City of Urbana Human Relations Com.* (1982), 104 Ill. App. 3d 817, 823, 433 N.E.2d 329.) Where two State statutes are in conflict, as in the case *sub judice,* the constitutional underpinning of the doctrine is absent and it is therefore inapplicable. In this situation Justice Blackmun's comments in a title VII case are all the more relevant.

"*** I believe that the employer's good faith may be a very relevant factor for a court to consider in exercising its discretionary power to fashion an appropriate affirmative action order. Thus, to take a not uncommon example, an employer charged with sex discrimination may defend on the ground that the challenged conduct was *required* by a State's 'female protective' labor statute. [Citations.] In such a case, the employer may be thrust onto the horns of a dilemma: either he must violate Title VII or he must violate a presumptively valid state law. Even though good-faith reliance on the state statute may not exonerate an employer from a finding that he has intentionally violated Title VII, [citation] surely the employer's good-faith effort to comply with Title VII to the extent possible under state law is a relevant consideration in considering whether to award backpay. Although backpay in such a case would serve

the statutory purpose of making the discriminatee whole, it would do so at the expense of an employer who had no alternative under state law and who derived no economic benefit from the challenged conduct." (*Albermarle Paper Co. v. Moody* 422 U.S. 405, 448, 45 L. Ed. 2d 280, 315-16, 95 S. Ct. 2362, 2389 (Blackmun, J., concurring).)

In light of the inapplicability of the preemption doctrine this rationale can be applied validly to the second step in the *Burdine* analysis. We find the rationale persuasive and consequently we hold that good faith reliance on a State protective statute can be a "legitimate and nondiscriminatory" reason for failing to hire female mine workers.

■ To rebut the *prima facie* case of discrimination under title VII the employer need only set forth a legitimate, nondiscriminatory reason for rejecting the alleged discriminatee. (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254-55, 67 L. Ed. 2d 207, 216, 101 S. Ct. 1089, 1094.) The employer need not *persuade* the trier of fact that it was actually motivated by the proffered reasons, but need only produce evidence raising "a genuine issue of fact as to whether it discriminated against the plaintiff." (450 U.S. 248, 254-55, 67 L. Ed. 2d 207, 216, 101 S. Ct. 1089, 1094.) The rationale for this rule is that under title VII a "prima facie case" establishes a legal presumption of discrimination (450 U.S. 248, 254 n.7, 67 L. Ed. 2d 207, 216 n.7, 101 S. Ct. 1089, 1094 n.7); when the employer has produced a satisfactory explanation, the presumption, but not the evidence giving rise to it, "drops from the case" (450 U.S. 248, 255 & n.10, 67 L. Ed. 2d 207, 216 & n.10, 101 S. Ct. 1089, 1095 & n.10). This rule accords with the Illinois rule of "bursting bubble" presumptions (see generally *Franciscan Sisters Health Care Corp. v. Dean* (1981), 102 Ill. App. 3d 61, 68-70, 429 N.E.2d 914), and we therefore find this analysis to be appropriate under the FEPA. Freeman's director of employee relations testified to Freeman's reliance on the statute. This satisfies the burden of production imposed by *McDonnell Douglas* and rebuts the *prima facie* case. See *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254-55 & n.9, 67 L. Ed. 2d 207, 216-17 & n.9, 101 S. Ct. 1089, 1094 & n.9.

At the third level of inquiry under *Burdine*, after rebuttal of the *prima facie* case, the burden of persuasion is retained by the alleged discrimination victim. (450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095.) "This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated

the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095.) We interpret this as affording the alleged discriminatee two distinct methods by which she may prove that the employer's articulated reason was a pretext. (450 U.S. 248, 255-56, 67 L. Ed. 2d 207, 216-17, 101 S. Ct. 1089, 1094-95; see *Miller v. WFLI Radio Inc.* (6th Cir. 1982), 687 F.2d 136, 138.) Under the first she may produce affirmative evidence of discrimination which would tend "directly" to establish the identity of the employer's actual motivation. The second method attacks the reasonableness ("good faith") of the employer's articulated explanation. This contemplates "indirect" proof; *i.e.*, showing that the employer's excuse is improbable tends to prove that the employer was motivated by another goal. Because it chose to articulate an unbelievable explanation for its actions, an inference that the real goal was unlawful arises indirectly. These two issues will be discussed separately.

The defendants contend that the record supports the Commission's finding that Freeman did not rely on section 9.01 in good faith. The hearing officer's written opinion tested Freeman's assertion of good-faith reliance on section 9.01 by determining the reasonableness of Freeman's belief in the statute's validity and enforceability, relying on *Schaeffer v. San Diego Yellow Cabs, Inc.* (9th Cir. 1972), 462 F.2d 1002, 1007. The hearing officer concluded that Freeman "disregarded the directive of its regulating agency and did so without countervailing authority from any other source. In view of the above I cannot find that [Freeman] relied upon §9.01 in good faith, and the company's affirmative defense based upon such reliance must fail." The perceived legal infirmity of the statute does not directly identify Freeman's "real" motivation but rather tends to suggest that a different reason is more likely because no one could reasonably have relied on the statute in the face of the Attorney General's opinion. This represents a finding that Freeman's reliance is "unworthy of credence" because it indirectly supports an inference of impermissible motivation.

In determining whether Freeman's reliance was reasonable, and therefore in good faith, the hearing officer focused on the Attorney General's opinion and the position of the Department of Mines and Minerals, and the absence of countervailing authority produced by Freeman to support its position. Based on these factors the hearing officer concluded, and the Commission agreed, that Freeman's reliance was not in "good faith." Were we required to decide whether section 9.01 was unconstitutional or impliedly repealed by the FEPA

wé might agree with the Commission. The question, however, is not whether section 9.01 could have been declared invalid by a court, but whether Freeman's reliance on the statute was so unreasonable as to be deemed not in good faith. A statute enjoys a presumption of validity and all reasonable doubts must be resolved in its favor. (*North Shore Post No. 21 v. Korzen* (1967), 38 Ill. 2d 231, 233, 230 N.E.2d 833.) "Prior to being *held* unconstitutional, a statute is an operative fact with consequences, (or potential consequences) which cannot be ignored." (Emphasis added.) (*Reich v. Board of Fire & Police Commissioners* (1973), 13 Ill. App. 3d 1031, 1035, 301 N.E.2d 492.) An opinion of the Attorney General does not constitute a judicial construction of the statute. (See *Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 292, 134 N.E.2d 292.) Production of "countervailing authority" is unnecessary as the statute is itself authority enough to warrant reliance upon it. The Commission asserts that the Attorney General's opinion eliminated any real threat of prosecution (see Ill. Rev. Stat. 1973, ch. 93, par. 36.01) under the act and therefore Freeman's reliance was unreasonable. While the Commission's premise might be tenable, its conclusion does not follow from the premise as the argument overlooks the civil consequences of violating a statute. (See *Marquette Third Vein Coal Co. v. Dielie* (1904), 208 Ill. 116, 70 N.E. 17; Ill. Rev. Stat. 1973, ch. 93, par. 10.07; see generally *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 221, 384 N.E.2d 323; *Loschiavo v. Greco Contractors, Inc.* (1981), 106 Ill. App. 3d 556, 558, 435 N.E.2d 702.) We conclude that the Attorney General's opinion does not constitute a ground upon which Freeman's reliance on section 9.01 may be deemed unreasonable, and we therefore hold, as a matter of law, that there was insufficient evidence to support the Commission's finding.

The Commission also contends that the record demonstrates a direct showing of discrimination with affirmative evidence. The order adopted by the Commission did not reach this issue as it had concluded that Freeman's asserted reliance was not in "good faith." We will therefore examine the record to determine whether any evidence was introduced in support of the Commission's contention. Compare *Miller v. WFLI Radio Inc.* (6th Cir. 1982), 687 F.2d 136, 139.

Freeman's director of employee relations testified that Freeman did not hire females for underground work because this practice was prohibited by the Coal Mining Act. As evidence tending to refute that statement, the defendants call attention to Freeman's hiring them before the repeal of the prohibition against female miners became effective in September of 1975. This overlooks the fact that Young and

Simpkins did not actually begin work in the mines until October 1975—after the prohibition was repealed. The Commission's brief argues that Freeman's agreement to a labor contract containing a prohibition against sex discrimination indicates that Freeman's reliance on section 9.01 was a pretext. This agreement does not pertain to hiring practices but only to "the terms or availability of classified employment" to those already employed and consequently we deem it irrelevant to the instant inquiry. Similarly, we fail to perceive the relevance of the Commission's assertion that testimony established that Freeman's president was an attorney. The relevant evidence allows only one rational conclusion: that Freeman actually relied on section 9.01 in failing to hire Young and Simpkins in early 1975. Therefore, a remandment on this issue is unnecessary as Young and Simpkins failed to satisfy their burden of proof. We need not address the issue of whether Young and Simpkins proved that those hired before them were not better qualified (see *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 258-59, 67 L. Ed. 2d 207, 218-19, 101 S. Ct. 1089, 1096-97) because our conclusion that Freeman's reliance on the statute is a legitimate, nondiscriminatory reason for failing to hire Young and Simpkins constitutes a finding that Freeman did not violate the FEPA. This also obviates a discussion of the backpay issue. We therefore affirm the portion of the circuit court's order reversing the Commission's order of backpay and reverse that portion of the order affirming the Commission's finding of discrimination.

Affirmed in part and reversed in part.

KARNS and KASSERMAN, JJ., concur.