THE BOARD OF EDUCATION OF WATERLOO COMMUNITY UNIT SCHOOL DISTRICT NO. 5, MONROE-ST. CLAIR COUNTIES, Plaintiff-Appellee, v. HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellants.

Fifth District   No. 5—84—0310

Opinion filed July 24, 1985.—Rehearing denied August 21, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Kathryn A. Spalding, Assistant Attorney General, of Chicago, of counsel), for appellant State of Illinois, Human Rights Commission.

Drach & Deffenbaugh, P.C., of Springfield, for appellant Fanny Sue Schellhardt.

Rau & Rau, of Waterloo, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Appellant, Fanny Sue Schellhardt, filed a complaint of sexual discrimination against the board of education of Waterloo Community School District No. 5, with the Fair Employment Practices Commission. (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*, now the Illinois Human Rights Act, Ill. Rev. Stat. 1983, ch. 68, par. 1—101 *et seq.*). After extensive hearings concerning her claim, the administrative law judge recommended that Ms. Schellhardt's complaint be dismissed. The Human Rights Commission determined that the complainant had proved discrimination and did not adopt the decision of the administrative law judge. Upon a complaint in administrative review filed by the Waterloo Board in the circuit court of Monroe County, the Commission's order was reversed.

The unlawful discrimination charge grew out of the board's rejection of Schellhardt's application for the position of.Instructional Materials Center (IMC) director, also referred to as librarian, for the Waterloo District's junior-senior high school. During the 1978-79 school year, the IMC director, Mrs. Potoff, a female who had held the position for many years, announced her retirement from the district. Schellhardt held the virtually identical position in the elementary school. Superintendent Moore proposed that the IMC positions for the elementary school and the junior-senior high school be consolidated and recommended that the complainant be appointed to fill the consolidated directorships. The board rejected the proposal for consolidation and authorized Mr. Moore to seek applications for IMC director.

While 15 applications were received, only the two applications that came from the complainant and from Charles VanWinkle, a junior high language arts teacher, were considered. VanWinkle applied by letter, in which he asserted reasons why he was a qualified candidate, one of which was his strong disciplinary approach in the school system. Though discipline and student rapport were not listed as necessary qualifications for the position of IMC director or otherwise mentioned in the job description, the board was aware that the former director had discipline problems in the library and was intent on not permitting the situation to continue. VanWinkle was called to Moore's office, where a thorough interview was conducted. Ms. Schellhardt was not called for a formal interview, but the record indicates that Mr. Moore was thoroughly acquainted with Ms. Schellhardt's qualifications and work history.

It is uncontroverted that objectively Schellhardt was the better

qualified of the two applicants, without consideration of the applicants' skills as disciplinarians. She had been the elementary IMC director for seven of her 11 years with the district, and had been certified as a media specialist according to the state certification system since 1975. Mr. VanWinkle had no prior experience in IMC, was not certified in the area, and in fact had been rejected for the certificate on two occasions. Proper certification was a State requirement for the type of position at issue and an essential minimum qualification of the job. VanWinkle expected to complete course work necessary to obtain the certification, but the board did not make his certification a condition when they selected him for the directorship. Except for VanWinkle's interview, neither applicant was formally observed or evaluated prior to the board's selection. VanWinkle·had been observed on an informal basis at school and during basketball games, where he voluntarily served in a crowd control capacity. He had developed a reputation among school personnel as a strong and effective disciplinarian and as having a good rapport with students.

■ This court has held that a discrimination claim under FEPA is examined in the same fashion as one brought pursuant to title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000a *et seq.* (1976)), as outlined in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. (*Freeman United Coal Mining Co. v. Fair Employment Practices Com.* (1983), 113 Ill. App. 3d 19, 21-22, 446 N.E.2d 543, 545.) The three-step analysis requires that the plaintiff prove a *prima facie* case of discrimination, that the defendant then assume the burden of producing a legitimate and nondiscriminatory reason for its actions, and that, once the defendant has done so, the plaintiff's burden of proof continues requiring him or her to prove unlawful discrimination. *Freeman United Coal Mining Co. v. Fair Employment Practices Com.* (1983), 113 Ill. App. 3d 19, 22, 446 N.E.2d 543, 545.

The third prong of the *Burdine* analysis is at issue here. The parties agree that Schellhardt set forth a *prima facie* case of discrimination: she was rejected for a position for which she was better qualified in favor of a man who was selected despite his lack of necessary certification and lesser credentials. The board articulated a legitimate, albeit subjective, reason for its selection of VanWinkle over the complainant. The Commission found, however, that the board's reason for hiring VanWinkle was pretextual, and therefore unlawful discrimination had been proved. The trial court's reversal was essentially premised upon its finding that the Commission had misinterpreted the law, and that the hiring process did not appear to favor one sex over the

other.

■■ VanWinkle's abilities as a disciplinarian and his reputedly excellent rapport with students, the stated reasons of the board for hiring him in preference to Schellhardt, were found to be pretextual by the Commission. It is apparent from the case law that a finding of pretext is a question of fact, which may not be overturned unless it is against the manifest weight of the evidence. (*K mart Corp. v. Human Rights Com.* (1984), 129 Ill. App. 3d 842, 473 N.E.2d 73.) The question then becomes, was the Commission's conclusion of pretext, as a finding of fact, against the manifest weight of the evidence? We believe that it was and that the decision of the circuit court was correct, even though the standard it may have employed was inartfully articulated.

■■ In *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635, the court stated that once an employer articulates a legitimate reason for its action, thereby destroying the presumption which arose from plaintiff's *prima facie* case, the plaintiff must then prove discrimination by persuading the trier of fact that a discriminatory motive more likely influenced the employer, or, more indirectly, by persuading the trier of fact that the employer's explanation is not credible. (126 Ill. App. 3d 999, 1004, 467 N.E.2d 635, 638.) In the instant case, though the Commission found that the board's proffered reason was incredible, there is little evidentiary support in the record to support such a conclusion. The complainant does not assert on appeal that discipline is not a legitimate concern in the hiring of school personnel. On the contrary, it was conceded on oral argument that disciplinary skill is often weighted in the evaluative processes of school boards.

Further, we reject the complainant's contention that the board could not consider the applicants' qualifications as disciplinarians because discipline was not listed as a necessary qualification in the job description for IMC director. The ability to control the conduct of junior-senior students in a library setting, often the place where many students gather simultaneously to study, is a matter of importance in the hiring of school personnel whether or not explained in writing in a job description. We would believe it an appropriate matter that the board could consider in hiring, a tacit qualification for any teaching position and most importantly, one that any applicant would assume and understand to be a necessary skill for success in the school system.

■■ Even if the board's judgment could objectively be considered faulty when examined on appeal, the board could legally give weight

to a subjective evaluation of the candidates' qualifications, as it is not required to hire the best objectively qualified person for any position. *(Board of Education v. Fair Employment Practices Com.* (1979), 79 Ill. App. 3d 446, 454, 398 N.E.2d 619, 625.) So long as discrimination is not the motive behind the selection, even a poor choice should not be judicially rejected. As in the *Downers Grove* case, the school board in the case at bar was able to offer little or no evidence that Schellhardt had weak disciplinary skills or poor rapport with students, and the lack of such evidence lends support to a finding of pretext. But, also as in *Downers Grove,* the record considered as a whole does not support the finding that the board discriminated against Schellhardt because of her sex. That of course is the central focus of a discrimination inquiry. 79 Ill. App. 3d 446, 452, 398 N.E.2d 619, 623.

For the foregoing reasons, we affirm the decision of the circuit court of Monroe County.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.