MELVA JEAN FOLEY, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Fifth District   No. 5—86—0681

Opinion filed February 8, 1988.

William A. Mueller, of Law Offices of Charles J. Kolker, of Belleville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellee Human Rights Commission.

Delmar O. Koebel, of Lebanon, for appellee McKendree College.

JUSTICE WELCH delivered the opinion of the court:

This cause is before us on administrative review from a decision of the Illinois Human Rights Commission (hereinafter the Commission), finding that appellee, McKendree College, had not discriminated against appellant Melva Jean Foley in failing to renew her employment contract. We affirm.

On August 18, 1981, Dr. Melva Jean Foley was hired as an associate professor of education by McKendree College under a nine-month probationary contract. Her duties were to teach a full load of 23 to 26 hours of classes per semester. Seventeen of these hours were to be spent in traditional classroom/lecture-style classes, while the remaining hours were to consist of supervising and advising student teachers who were not in a classroom/lecture setting. The student teachers were, however, to meet with Dr. Foley in periodic seminar-type classes. Dr. Foley's responsibilities also were to include arranging for placement of the student teachers.

Dr. Foley also was hired as the chairperson of the division of education. Her duties in this regard were to include recruiting faculty, preparing budgets, assisting faculty, scheduling and representing faculty on committees. Dr. Foley testified that approximately 10% of her time was spent in her duties as chairperson of the division of education.

Pursuant to her employment contract, Dr. Foley was subject to an evaluation process, the purpose of which was to determine whether her contract should be renewed for the following academic year. The evaluation process consisted of self-evaluation, student evaluations, colleague evaluations and evaluation by the dean of the college. These evaluations were submitted to a "Contract Renewal, Promotion and Tenure Committee" (hereinafter the CRPT), a committee consisting of five faculty members, which reviewed them and made a recommendation to the president of the college. The college dean also made an independent recommendation to the president, who made the final decision regarding contract renewal.

The colleague and dean evaluations were based on personal observations of one of Dr. Foley's classes. Dr. Foley was evaluated by two of her colleagues in the education division. Both were tenured members of the faculty. Both presented evaluations which were positive and highly complimentary of Dr. Foley. The evidence disclosed that both of these evaluators entered the classroom discretely and remained in the back of the room so that the students were unaware of their presence.

The dean's evaluation was also generally positive. However, he ex-

pressed that his major concern was that:

> "Dr. Foley lectures in a somewhat diffident way which lacks the kind of forcefulness or excitement needed to bring this material to life. In her teaching of teachers, she is teaching as much by example as by content. I would wish for more imagination, excitement and forcefulness in her example ***."

Dr. Foley testified that when the dean attended her class he seated himself in the middle of the students and appeared to fall asleep. This disrupted the class and the students appeared less responsive as a result of his presence. Also, that particular class presentation had been planned around use of an overhead projector which failed to operate properly. This necessitated a last minute reorganization of the presentation.

The student evaluations were completed by students enrolled in Dr. Foley's courses, including those in nonclassroom, student teaching courses. Dr. Foley's composite score for all courses was 3.88 on a scale of from 1 to 5. However, her composite score considering only her classroom/lecture-style courses dropped to 3.57.

These various evaluations were presented to the CRPT, which voted 3 to 2 in favor of renewal, with the understanding that Dr. Foley would be reevaluated the following year. This decision was reached only after a long discussion, and was "a mixed sort of decision." The CRPT's recommendation was forwarded to the president.

The dean recommended to the president that Dr. Foley's contract not be renewed, based on his perception of her as a "mediocre" teacher. He testified that her student evaluations were much worse than those of other teachers evaluated that year. The dean also testified that, in making his recommendations, he considered that more experienced teachers should get more favorable student evaluations than less experienced teachers, and that a person whose discipline is teaching teachers should have stronger evaluations than a person whose discipline is, for example, teaching biology.

The president decided not to renew Dr. Foley's contract. Dr. Foley argues that she was discriminated against on the basis of her sex, female, and her age, 55 years at the time of the employment decision.

Appellant compares her situation with that of Charles Davis, an assistant professor of biology at McKendree College, who was evaluated for renewal at the same time as Dr. Foley. The composite score of his student evaluations was 3.91. He received satisfactory and basically positive evaluations from a colleague and the dean. However, both evaluators included constructive comments on how Davis could

improve his teaching. There is no evidence in the record as to the recommendation of the CRPT with respect to Davis. Davis is a 30-year-old male. His contract was renewed.

Dr. Foley was replaced in her teaching duties by a 43-year-old female. Her duties as division chairperson were assumed by a 57-year-old male who was also chairperson of the social sciences division. Subsequent to Dr. Foley's leaving the faculty, the administration decided to combine the education and social science divisions because of the small number of faculty positions in the education division. The chairperson of the social sciences division remained as chairperson over the merged divisions.

Dr. Foley filed her charge of discrimination with the Department of Human Rights on August 25, 1982. A hearing was held before an administrative law judge, who entered his final recommended order and decision on June 7, 1985. The administrative law judge found that Dr. Foley had established a *prima facie* case of disparate treatment discrimination, that the college had articulated a legitimate, nondiscriminatory explanation for its decision not to renew Dr. Foley's contract, but that the explanation was merely a pretext for discrimination. The college filed its exceptions to the recommended order and decision with the Human Rights Commission. After briefing and oral arguments, the Commission reversed the order of the administrative law judge as against the manifest weight of the evidence, finding that the college's explanation for its refusal to renew Dr. Foley's contract was *not* a pretext for discrimination. The Commission found that it was reasonable for the college to consider Dr. Foley's student evaluations only with respect to traditional classroom/lecture-style classes, and that when this was done, it was reasonable to conclude that Davis was a better teacher than Dr. Foley. Thus, renewing Davis' contract while not renewing Dr. Foley's contract was not evidence of discrimination. The Commission also found that the evaluation techniques used by the dean were not a pretext for discrimination and that it was not unreasonable to apply higher standards to those who are teaching students to be teachers than those who are teaching students biology. The Commission concluded that Davis and Foley were not similarly situated and could not be compared.

■ We start by pointing out that the findings of the Human Rights Commission must be sustained unless they are contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A)(2).) A decision is against the manifest weight of the evidence when a conclusion opposite that of the agency is clearly evident. (*Madonia v. Houston* (1984), 125 Ill. App. 3d 713, 716, 466 N.E.2d 648,

650.) In examining the record, a reviewing court will look at all of the evidence in opposition to the challenged finding as well as the evidence which tends to support it. *Gee v. Board of Review of the Department of Labor* (1985), 136 Ill. App. 3d 889, 896, 483 N.E.2d 1025, 1029.

■ Proving a case of discrimination under a theory of disparate treatment involves a three-step process. First, the complainant carries the initial burden of establishing by a preponderance of the evidence a *prima facie* case of discrimination. Then the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the complainant's rejection. Finally, complainant has the opportunity, and the burden, of proving by a preponderance of the evidence that the employer's articulated reason for complainant's rejection is, in fact, a mere pretext for discrimination. (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 215, 101 S. Ct. 1089, 1093.) The ultimate burden of persuading the trier of fact that the employer intentionally discriminated remains at all times on the complainant. *Burdine*, 450 U.S. at 253, 67 L. Ed. 2d at 215, 101 S. Ct. at 1093.

All of the parties to the instant case agree that Dr. Foley did establish a *prima facie* case of discrimination and that the college did articulate a legitimate, nondiscriminatory reason for its refusal to renew Dr. Foley's employment contract. The only issue before us on review is whether the Commission's finding that the college's stated reason for its rejection of Dr. Foley was not a pretext for discrimination is against the manifest weight of the evidence.

■ That an employer's articulated explanation is a pretext can be proven either by direct evidence of discrimination or by showing that the employer's explanation is unreasonable and therefore unworthy of belief. (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095; *Freeman United Coal Mining Co. v. State Fair Employment Practices Comm'n* (1983), 113 Ill. App. 3d 19, 25-26, 446 N.E.2d 543, 548.) Because Dr. Foley presented no direct evidence of discrimination, the question before the Commission was which party's explanation of the college's motivation it believed. (*United States Postal Service Board of Governors v. Aikens* (1983), 460 U.S. 711, 716, 75 L. Ed. 2d 403, 411, 103 S. Ct. 1478, 1482.) Evidence which may be relevant to a showing of pretext includes facts as to the employer's treatment of complainant during her prior term of employment and the employer's general policy and practice with respect to employment of persons in protected groups. On the latter point, statistics as to the employer's

policy and practice may be helpful.

After reviewing the entire record, we find nothing to indicate that the Commission's finding is against the manifest weight of the evidence. McKendree College failed to renew Dr. Foley's contract because it was dissatisfied with her performance as a teacher. This belief was based in part on Dr. Foley's student evaluations, in which she scored lower than Charles Davis, whose contract was renewed. That McKendree College chose to look only at Dr. Foley's student evaluations for classes which she actually taught as opposed to classes in which she merely supervised student teachers is not evidence of pretext. The college was attempting to evaluate Dr. Foley's teaching abilities. As the Commission properly found, there is nothing inherently wrong with placing more emphasis on Dr. Foley's teaching ability in a traditional classroom setting. The evidence clearly reveals a distinction between Dr. Foley's evaluations in lecture-type classes as opposed to supervisory-type classes and this distinction was properly utilized by the college. The college reasonably believed that the classroom evaluations more realistically reflected actual teaching ability. Charles Davis taught only lecture-style classes and thus it was reasonable for the college to compare the scores of the two teachers only with respect to those classes which were similar. Based on this comparison, the college could reasonably conclude that Davis was a better teacher than Dr. Foley. The student evaluations of the two teachers were not so similar that renewing Davis' contract while failing to renew Dr. Foley's contract evidences discrimination.

Nor is the fact that the dean only observed Dr. Foley teach on one occasion, and may have disrupted the class on that occasion, evidence of pretext. Appellant argues that the dean's allegedly poor evaluation techniques somehow reflect on his credibility and therefore indicate pretext. We fail to see how this is so. The issue is not whether the dean was right or wrong in his evaluation of Dr. Foley's teaching abilities, but whether her sex or age played a part in that evaluation. There is no evidence in the record that the dean used different or better techniques or methods when evaluating other teachers. The Commission's finding that the dean's evaluation methods do not indicate pretext is not against the manifest weight of the evidence.

Finally, that the college applied higher standards to "teachers of teachers" than to biology teachers is not unreasonable. In this respect, Dr. Foley and Charles Davis are not similarly situated for purposes of comparison. A teacher of teachers is presumably an expert in the field of teaching. A teacher of biology students is presumably an expert in the field of biology. It stands to reason that a teacher of

teachers should be a better teacher than a teacher of biology. Further, it was reasonable for the college to desire that a teacher of teachers be a better teacher than a teacher of biology. As the dean expressed in his evaluation of Dr. Foley, a teacher of teachers teaches as much by example as by content. For the college to expect higher evaluations for teachers of teachers than for teachers of biology was not unreasonable and was not indicative of pretext.

As further evidence to support the Commission's finding that the college's articulated reason for its refusal to renew Dr. Foley's contract was not a pretext for discrimination is that Dr. Foley was replaced in her teaching duties by a 43-year-old female. She was replaced in her duties as chairperson of the education division by a 57-year-old male. We would further point out that the recommendation of the CRPT was not overwhelming in favor of renewal. Instead, it was a close decision filled with reservations. This would tend to support not only the dean's recommendation, but also the decision of the president. It was not only the dean who was dissatisfied with Dr. Foley's teaching performance, but also at least two of the members of the CRPT.

■■ Appellant raises an additional point with respect to her argument that the college discriminated against her on the basis of her age. At the administrative hearing, the dean testified that, in making his evaluations, he took into account his belief that teachers with more experience should receive more favorable student evaluations than teachers with less experience. Appellant argues that use of this subjective factor in evaluating her was merely a pretext for age discrimination and that it has an adverse impact on the elderly.

With respect to appellant's claim of adverse impact, the Commission found that the disparate impact theory of discrimination had not been properly pled or proved. We agree. The burden is on the complainant to prove discrimination. (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 67 L. Ed. 2d 207, 215, 101 S. Ct. 1089, 1093.) Dr. Foley has not carried this burden with respect to a claim of disparate impact discrimination.

The Commission did not explicitly discuss whether use of this subjective factor in evaluating Dr. Foley was a pretext for discrimination. The Commission did find, however, that the college did not discriminate against Dr. Foley on the basis of her age. We agree.

■■ ■ While use of a subjective factor in making employment decisions may be a mask for discrimination, we find no evidence that this is so in this case. An employer can legally give weight to a subjective evaluation of a candidate's qualifications so long as discrimina-

tion is not the motive behind the selection. (*Board of Education v. Human Rights Comm'n* (1985), 135 Ill. App. 3d 206, 210-11, 481 N.E.2d 994, 997.) Indeed, it has been recognized that in the employment of professional teachers, there are intangibles involved in rating ability, and there must necessarily be subjective elements which are considered in the process. (*Board of Education v. Fair Employment Practices Comm'n* (1979), 79 Ill. App. 3d 446, 453, 398 N.E.2d 619, 624.) The question for the trier of fact is whether use of these subjective elements in the employment decision is credible and reasonable or whether it is merely a pretext for discrimination. (*Board of Education v. Fair Employment Practices Comm'n*, 79 Ill. App. 3d at 453, 398 N.E.2d at 624.) The college's use of subjective factors in evaluating Dr. Foley was both credible and reasonable. It is reasonable to expect an experienced teacher to be better at her job than an inexperienced teacher. An experienced teacher should, therefore, receive more favorable student evaluations than a less experienced teacher. Further, this subjective element was only one of the many factors affecting the employment decision in this case. We would finally point out that Dr. Foley was replaced by two individuals who were both in the protected age group.

The record considered as a whole does not support a finding that the college discriminated against Dr. Foley on the basis of her sex or her age. That is the central focus of a discrimination inquiry. (*Board of Education v. Human Rights Comm'n* (1985), 135 Ill. App. 3d 206, 211, 481 N.E.2d 994, 997.) Instead, the record indicates that Dr. Foley's employment contract was not renewed because McKendree College was dissatisfied with her performance as a teacher. We emphasize that the burden is on the complainant to prove pretext, and ultimately discrimination, and not on the employer to prove lack of pretext. (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095.) The finding of the Human Rights Commission in this regard is not against the manifest weight of the evidence.

For the foregoing reasons, the decision of the Human Rights Commission is affirmed.

Affirmed.

KARNS and LEWIS, JJ., concur.