NORTHTOWN FORD, Petitioner, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents.

Fourth District   No. 4—87—0613

Opinion filed July 7, 1988.

Jon D. Robinson, of Hull, Campbell & Robinson, of Decatur, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Richard W. Merrill, Jr., Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Human Rights Commission.

Margaret Parish Sutton, of Fort Monroe, Virginia, for respondent Delores Troyer.

JUSTICE McCULLOUGH delivered the opinion of the court:
Northtown Ford (Northtown) appeals a determination of the Illinois Human Rights Commission (Commission) which found Northtown had discriminated in sick leave benefits and in salary against Delores Troyer, a former manager, on the basis of her sex. (Ill. Rev. Stat. 1981, ch. 68, par. 2—102(A).) Northtown argues: (1) the Commission erred in allowing amendment of Troyer's initial charge; (2) the Commission's determination that Troyer had established discrimination in pay was contrary to the manifest weight of the evidence; (3) the sick-pay benefit claim was untimely; (4) recovery for sick-pay benefits should be limited to compensation for unpaid sick days falling within 180 days of the charge filing; and (5) the Commission abused its discretion in awarding attorney fees.

We affirm.

On April 27, 1981, Troyer filed a form discrimination charge with the Department of Human Rights. On the form she checked sex and retaliation as bases of the discrimination. In the box marked "date most recent discrimination took place," she stated May 1980 continuing to February 27, 1981, and February 27, 1981. Troyer, in her statement of particulars, stated she was hired as a bookkeeper but promoted to business manager/secretary-treasurer of Northtown in 1979. In May 1980, her salary was reduced. She also alleged she was not paid full sick leave while a similarly situated male manager was paid full sick leave.

On February 22, 1982, the Commission issued a complaint of civil

rights violation. Count I alleged Northtown discriminated in salary reduction in May 1980. Count II alleged retaliatory discharge. On July 16, 1982, the Commission issued a second complaint, alleging that from late September 1980 until early November 1980, complainant was on medical leave. Northtown paid her for one week medical leave. A similarly situated male employee on medical leave for six weeks in late 1979 was paid his full salary. The complaint further alleged Northtown failed to pay Troyer for her February 23, 1981, absence due to illness.

Northtown filed a motion to dismiss count I of the February 22, 1982, complaint as untimely. (Ill. Rev. Stat. 1981, ch. 68, par. 7—102(A)(1).) The equal pay discrimination charge based upon the May 1980 reduction in salary was dismissed as untimely. However, the administrative law judge (ALJ) allowed Troyer leave to amend her complaint to state facts which would establish a continuing equal pay violation if one existed.

In Troyer's amended complaint, she alleged she was promoted to business manager/secretary-treasurer in September 1979. She was paid less than her male predecessor. The lesser amount was not reasonably related to any seniority system, merit system, or system related to quantity or quality of production or any factor unrelated to her sex. In counts II and III, Troyer realleged her retaliatory discharge and discrimination in sick pay claims.

The parties stipulated to the following facts: (1) Troyer, a female, was hired by Northtown on May 5, 1979, as a bookkeeper; (2) in September 1979, Troyer was given the duties and responsibilities of business manager/secretary-treasurer, which position she held until termination; (3) on February 27, 1981, Northtown terminated Troyer's employment; (4) Troyer was on medical leave in 1980; and (5) Northtown paid Troyer only one week sick pay while she was on medical leave.

Troyer and Edward Hazelhurst were the principal witnesses at the hearing. Troyer testified that after she was promoted in 1979, she supervised office personnel, pulled statements, kept the books, completed sales tax forms, completed wage tax forms, computed bonuses, and managed the business functions of the office. Initially, she was paid $1,600 per month plus a .5% audited net, end-of-the-year bonus. She also received the use of a company car and a gasoline allowance. Donald Nelson, her predecessor, had received $1,750 per month and a 1.5% audited net, end-of-the-year bonus. He also received the use of a company car and a gasoline allowance. Nelson was guaranteed $25,000 a year.

Troyer and Hazelhurst agreed that Troyer's duties were identical to Nelson's duties. Troyer stated she had prior business manager experience. Hazelhurst stated he was unaware of her managerial experience. Hazelhurst discussed a sliding scale compensation plan with Troyer prior to her promotion. She chose the larger salary, less bonus, scheme. She did not indicate that she thought her salary was unfair to Hazelhurst at that time. However, both plans were for a lower salary amount than Nelson earned. Troyer was not offered a guarantee.

Troyer agreed she had a choice between two plans but was not sure she ultimately was paid the salary she agreed to work for. At the time she agreed to the compensation plan, she did not believe she was being discriminated against or that the plan was unfair.

Nelson, who worked with Northtown less than a year, received a $3,000 bonus when he left in 1979. He was paid for a week's absence. Troyer did not receive a bonus in 1979. The end-of-year audited net showed a business loss in 1979. However, an accounting change occurred that year. This accounting change increased the loss figure for the year. Hazelhurst testified that Nelson received a part of his guaranteed salary rather than a bonus when he left. However, the business records for Northtown show that Nelson was paid "a bonus" amount of $3,000. Nelson was guaranteed his salary regardless of the profit structure of the corporation. Troyer stated that she first discovered she was being paid in an unfair manner after she filed her charges.

On May 1, 1980, four of Northtown's managers' salaries were reduced. The male managers retained or increased their bonus percentages. Troyer's bonus was completely eliminated. The reduction was announced in April 1980, as part of a cost-cutting effort. Troyer discussed the reduction with Hazelhurst in April 1980. Troyer stated Hazelhurst told her that she could take a cut better than any of the male employees because she was married and had a husband who was working. Hazelhurst admitted that he could have made such a statement to Troyer. He explained that it seemed to him that an individual household with two spouses working could sustain an income loss easier than a household with one spouse working.

No records were kept of managers' absences. Northtown's dealership compensation plans for 1979 and 1980 show only women received paid sick days. All of the women employees of Northtown were listed as office personnel, except Troyer and Charlotte Finn. Finn was specifically given paid sick leave on the parts department list. After her promotion, Troyer was not listed as entitled to six paid sick days per year. Hazelhurst admitted the policy was implemented to control the

amount of sick days which women took. In late 1980, the sick pay policy was deleted for office personnel. Hazelhurst did not tell Troyer that the change in policy applied to her. Troyer believed it did not as she was management.

Hazelhurst further stated that he could not say whether all managers were paid for their sick leave. Most were paid when they were absent. Hazelhurst admitted managers' absences were "winked at" because often managers had to work overtime. However, he considered Troyer's position differently from other management positions because it required less overtime. Hazelhurst believed Troyer did not work overtime. He considered her as an office manager rather than a business manager.

Troyer testified that managers were always paid for their absences due to illness. She knew of no instance other than her own where a manager had his salary docked. Dale Ely, a manager, had been paid for at least six weeks' medical leave in December 1979. Dale Wines, a manager, was paid for absences due to illness in January 1981 and February 1981. Troyer stated that she worked overtime as necessary and always worked at least 40 hours per week. Sometimes she worked until 9 p.m. and on Saturday. No records were kept of managers' absences because managers did not have to clock in.

Hazelhurst thought Troyer left work unfinished but admitted there were times when she stayed late and worked Saturdays. She was not paid overtime. Hazelhurst admitted there was no reason to think Troyer should not take compensatory time if she worked more than 40 hours.

The dealer compensation plan lists Troyer on the management page. She was not listed as office personnel after her promotion. In September and October of 1980, Troyer was off work for six weeks due to surgery. She was paid for one week of medical leave. An additional two weeks were paid as vacation. After Hazelhurst terminated Troyer's employment, he wrote a letter to the Illinois Department of Labor advising it that Troyer had received two weeks' vacation pay in September and October 1980. Hazelhurst did not recall at the hearing whether Troyer had received three weeks' medical pay or one week. No records were kept of her absence.

Troyer admitted that she did not object about the lack of medical pay until her employment was terminated. She told Hazelhurst on February 27, 1981, that she believed she was being discriminated against. He fired her.

On February 23, 1981, Troyer missed a day of work because of

illness. Hazelhurst testified he decided that day not to pay her for sick leave because her attitude had deteriorated since the May pay cut. He did not tell anyone except the payroll clerk of his decision.

Hazelhurst talked to Troyer on February 27, 1981, the payday following the February 23, 1981, absence. She became belligerent, said he would hear from the Commission, and he terminated her employment. Troyer never complained about discrimination prior to the termination of her employment.

In his interim order, the administrative law judge found: complainant was promoted to business manager and had the same duties and responsibilities as her predecessor; she was offered a choice between two compensation plans, both of which were significantly less than her predecessor's salary; and Troyer had prior managerial experience. The ALJ further found: Northtown had no formal sick-pay policy for managers, the decision on whether to pay managers sick leave was totally subjective and at Hazelhurst's discretion; all women employees and only women employees were given a fixed number of sick days; pay for sick days was discretionary for other employees; from the start of Troyer's employment until February 23, 1981, no manager was docked pay because of illness; complainant was on medical leave for surgery for six weeks in September through October 1980; she was paid for one week sick leave; a male manager absent in 1979 was paid for six weeks' medical leave; Troyer was not office help; a service manager was paid for sick days in January 1981; and Hazelhurst told Troyer that she should be better able to absorb a salary reduction because she had a husband who worked.

The ALJ concluded the Commission lacked jurisdiction over the May 1980 salary reduction and that Troyer had not set forth a *prima facie* case of retaliation. However, the ALJ found Troyer had established that she received less compensation than her male predecessor although the two performed the same work requiring equal skill, effort, and responsibility. The ALJ also found that Northtown had not established the differential was due to a seniority system, merit system, or system which measures earnings by quality or quantity of production or any other nondiscriminatory reason. The ALJ concluded Northtown had discriminated in pay and in denying Troyer paid sick leave. Subsequently, the ALJ awarded attorney fees to Troyer, but reduced the award by 20% because Troyer did not prevail on two of her claims.

The Commission affirmed the recommended order. However, it limited the back-pay award to a period of 180 days prior to the charge filing. The circuit court remanded back to the Commission for a re-

consideration of the attorney fees. On remand, the Commission affirmed an increase in the fee award to $7,592.

Initially, Northtown argues the Commission erred in allowing Troyer to amend her complaint to state discrimination in starting salary based on sex. Northtown argues that this "totally new claim" violated section 7—102(F) of the Illinois Human Rights Act.

Section 7—102(F) of the Illinois Human Rights Act states:

> "Complaint. (1) When there is a failure to settle or adjust any charge through conciliation, the Department shall prepare a written complaint, under oath or affirmation, stating the nature of the civil rights violation substantially as alleged in the charge previously filed and the relief sought on behalf of the aggrieved party." Ill. Rev. Stat. 1981, ch. 68, par. 7—102(F).

No Illinois case law has yet interpreted this language. However, the Commission has interpreted the above language. In *In re Zabroski* (1981), 2 Ill. HRC Rep. 75, the complainant filed a charge alleging she was discriminated against in pay because of her sex and denied a promotion in retaliation for the filing of her complaint. Subsequently, in an amended complaint, she alleged her employer failed to promote her because of her sex. The Commission found an allegation of a failure to promote based upon retaliation was different in nature from an allegation of a failure to promote based upon sex discrimination. It noted that the Commission was not allowed to amend charges to create totally new claims of discrimination.

In *In re Loarte* (1985), 19 Ill. HRC Rep. 413, an administrative law judge denied the complainant's motion to amend her complaint to add retaliation and a failure to rehire based upon national origin. The Commission noted the national origin claim was substantially related to the original charge of discrimination based upon national origin. The Commission found the complaint must state the civil rights violation substantially as alleged in the charge. Any amendment must also state the violation substantially as alleged in the charge.

■ In the absence of Illinois case law on an issue, Illinois courts have considered Federal law as persuasive. (*Brewington v. Department of Corrections* (1987), 161 Ill. App. 3d 54, 513 N.E.2d 1056; *City of Cairo v. Fair Employment Practices Comm'n* (1974), 21 Ill. App. 3d 358, 315 N.E.2d 344.) Federal cases indicate that charges are to be liberally construed. They are viewed in light of their purpose, which is to indicate the scope of the alleged violation and provide a framework for conciliation attempts. (*Kaplan v. International Alliance of Theatrical & Stage Employees* (9th Cir. 1975), 525 F.2d 1354.) The claim, thus, may be adjudicated as long as it is reasonably related to the

original charge. *Chung v. Pumona Valley Community Hospital* (9th Cir. 1982), 667 F.2d 788 (failure to allege continuing-violation theory did not prevent investigation of the claim where the charge suggested a number of discriminatory acts).

■ Here, the initial charge alleged discrimination in pay based upon sex. The specific facts listed included the May 1980 reduction in pay. The amended complaint also alleged discrimination in salary based upon sex but that the discrimination was continuing in nature. The substance of the discriminatory action alleged remained the same. The amendment, thus, did not violate section 7—102(F) of the Illinois Human Rights Act. (Ill. Rev. Stat. 1981, ch. 68, par. 7—102(F).) We note the form which Troyer was asked to complete only asked for the most recent example of discrimination. It did not ask for every act that might constitute discrimination in pay based upon sex. Since the nature of the claim did not change, no violation of section 7—102(F) occurred.

Northtown next argues the determination of the Commission was contrary to the manifest weight of the evidence because (1) Troyer did not realize she was being discriminated against when she accepted the business manager position; (2) Troyer voluntarily agreed to the salary; and (3) evidence indicated Northtown lost money in 1979.

■ ■ Factual determinations by an administrative agency are *prima facie* correct. They may be set aside only if they are against the manifest weight of the evidence. (*Foley v. Human Rights Comm'n* (1988), 165 Ill. App. 3d 594, 519 N.E.2d 129; *McCullar v. Human Rights Comm'n* (1987), 158 Ill. App. 3d 1011, 511 N.E.2d 1375; *Lipsey v. Human Rights Comm'n* (1987), 157 Ill. App. 3d 1054, 510 N.E.2d 1226.) Generally, it is illegal for an employer to pay disparate wages or salaries for jobs held by persons of different sexes if the jobs require equal skill, effort, and responsibility, and are performed under similar circumstances. The disparate pay may be acceptable when it is attributable to a seniority system, merit system, or a system which measures earnings by quantity or quality of production, or represents a differential based on factors other than sex. *McCullar*, 158 Ill. App. 3d 1011, 511 N.E.2d 1375; *Kenall Manufacturing Co. v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 695, 504 N.E.2d 805.

■ ■ The complainant must establish a *prima facie* case of discrimination. Once this is done, the burden of persuasion shifts to the employer, who must establish the disparate pay is due to a nondiscriminatory reason. (*McCullar*, 158 Ill. App. 3d 1011, 511 N.E.2d 1375.) Whether an employer's proffered reason for disparate pay is a pretext is a question of fact. (*Board of Education of Waterloo Com-*

*munity Unit School District No. 5 v. Human Rights Comm'n* (1985), 135 Ill. App. 3d 206, 481 N.E.2d 994.) When resolution of the issues before an agency turns on credibility determinations, the agency's determination should be sustained. *Brewington,* 161 Ill. App. 3d 54, 513 N.E.2d 1056.

■ Northtown does not contend Troyer failed to establish a *prima facie* case of discrimination. Instead it argues, in essence, that the decision is contrary to the manifest weight of the evidence because it established a nondiscriminatory reason for the disparate pay. Here, Troyer and Nelson had identical duties, according to both Hazelhurst and Troyer. Disregarding the bonus, Troyer was also paid substantially less money than Nelson. At the hearing, Hazelhurst stated that Nelson drove a harder bargain.

The fact that Troyer did not realize that she was being discriminated against at the time the discrimination started is not relevant to the determination of whether discrimination in fact occurred. Her choices of salary options were both substantially lower than her male predecessor's salary. Northtown's business reason for the disparate pay was that it lost money in 1979. The evidence in this area was disputed as to whether Northtown knew it was losing money when it hired Troyer, whether the loss was generated by the accounting change, the size of the business loss, evidence that Nelson received a partial bonus that year, and indicia that Troyer, regardless of the profit structure which would affect bonuses, was treated differently in salary solely because of her sex. Under the evidence presented here, the Commission's determination is not contrary to the manifest weight of the evidence.

Northtown next argues the Commission should not have considered Troyer's sick-pay claim because she had notice of the discrimination more than 180 days prior to the filing of her charge. Northtown does not argue the Commission erred in finding discrimination occurred.

■ A charge of discrimination must be filed within 180 days of the date when the employee has notice of the discriminatory act. (*Larrance v. Human Rights Comm'n* (1988), 166 Ill. App. 3d 224, 519 N.E.2d 1203; *Board of Governors v. Rothbardt* (1981), 98 Ill. App. 3d 423, 424 N.E.2d 742; Ill. Rev. Stat. 1987, ch. 68, par. 7−102(A)(1).) The charge-filing period is jurisdictional. *Larrance,* 166 Ill. App. 3d 224, 519 N.E.2d 1203.

■ There was no formal policy noting when salary would be paid to persons on medical leave. Troyer testified that she expected to be paid for her medical leave. The payroll records show Troyer was paid

for three weeks while she was on medical leave. On one of the pay periods, she did not receive a check. The receipt of her first check after her return to work is a logical point at which she could be expected to know that no further sick benefits would be paid to her. The payroll records show that this date was October 31, 1980. Therefore, the charge, filed April 27, 1981, was within the 180-day, charge-filing limitation period.

Troyer was not asked at the hearing, contrary to Northtown's argument, whether she knew immediately after her return to work why she had not been paid full medical benefits. The evidence indicated Troyer in fact did not realize she had only been paid one week of medical benefits until after her termination and her request for vacation pay. The determination of when Troyer had notice of the lack of paid medical leave, under the circumstances presented here, was a question of fact for the ALJ. We will not disturb his assessment on appeal.

■■ Northtown next argues the Commission should have limited Troyer's recovery of medical leave to those instances falling within the 180 days immediately preceding her charge filing. The Commission in its order on the unequal salary claim limited the back-pay award to 180 days immediately preceding the charge filing. Northtown argues this approach should be used concerning all recovery awards. The ALJ had recommended the back-pay award be calculated from the time Troyer was first promoted. The violation as it pertained to the discrepancy of salary was of a continuing nature. Therefore, the ordinary statute of limitations period did not apply to it since each individual pay period was considered a new act of discrimination for purposes of charge-filing.

As it applies to sick pay, the discrimination was not of a continuing nature. The 180-day charge-filing limitation period applied. Troyer filed her claim in a timely fashion, though she filed near the end of the 180-day period. Since no possibility of an extensive award exists, as in the case in a continuing violation, no reason exists to deny complainant recovery for the full amount of salary lost as the result of a specific instance of discrimination.

■■ ■ Next, Northtown argues the Commission abused its discretion in awarding attorney fees to Troyer's counsel, since Troyer lost on two of her four claims. The Commission awarded fees and costs to Troyer. Northtown also argues that Troyer should lose on all of her claims. Northtown urges this court to reduce the award by 75%. Northtown does not allege that the amount of fees is unreasonable.

The Commission argues it followed the dictates of *Hensley v. Eckerhart* (1983), 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933, and section 8—108(G) of the Illinois Human Rights Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—108(G)). The Commission also argues that the fee award was not an abuse of discretion. Troyer notes that more than monetary recovery is often at stake in a civil rights lawsuit.

Troyer originally requested $8,430.50 in attorney fees. She noted she had eliminated time spent solely on the retaliation and May 1980 pay reduction claims. She submitted affidavits and itemized statements of her hours. The ALJ awarded $6,619.60 in attorney fees, noting Troyer lost on two issues. He did not state reasons or make factual findings for his order. The circuit court reversed this determination as not based on any evidence and remanded to the Commission. On remand, the Commission affirmed an award of $7,592 in attorney fees.

In *Hensley*, the court noted that where a litigant loses on its principal contentions, an award of full attorney fees under the civil rights statutes may be excessive. However, where the work on the unsuccessful claim is related to the work on the successful claim, an attorney fee award may be appropriate. If the successful and unsuccessful claims are unrelated, the prevailing party should not be awarded fees for work done on the unrelated, unsuccessful claim. Illinois has adopted the *Hensley* approach. *Brewington*, 161 Ill. App. 3d at 68, 513 N.E.2d at 1063.

Thus, the extent to which a complainant prevails is an important factor in determining the propriety of the fee award. It is not, however, the sole factor. A strictly mathematical approach is not followed. (See *In re Clark* (1982), 4 Ill. HRC Rep. 193.) Here, since amounts related to the time on the retaliation claim and May 1980 reduction were eliminated, the fee award was restricted to the issues upon which Troyer prevailed. The fact that her individual monetary recovery was not large does not make the fee award an abuse of discretion. A claimant's monetary award may be a relatively small part of the rights justified through a civil rights claim. *Board of Trustees v. Human Rights Comm'n* (1985), 138 Ill. App. 3d 71, 485 N.E.2d 33.

For the above reasons, we affirm the order of the Illinois Human Rights Commission.

Affirmed.

KNECHT and SPITZ, JJ., concur.