WARREN ACHIEVEMENT CENTER, INC., Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

Third District   No. 3—90—0502

Opinion filed July 10, 1991.—Rehearing denied August 20, 1991.

Law Offices of James P. Baker, of Springfield (James P. Baker, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

Roxy Schumann, of Davenport, Iowa, for respondent Charles Patterson.

JUSTICE McCUSKEY delivered the opinion of the court:

The petitioner, Warren Achievement Center (hereinafter Warren), appeals an order by an Illinois Human Rights Commission (hereinafter Commission) administrative law judge who found for the complainant, Charles Patterson (hereinafter Patterson). The administrative law judge's decision finding Warren had discriminated against Patterson on the basis of race and gender was affirmed by a three-member panel of the Commission. We affirm.

Warren, a not-for-profit corporation, provides various services for the developmentally disabled and senior citizens in a four-county area. Warren's board of directors establishes internal policies that are carried out by the chief administrative officer, Jo McVey. The various program directors report to McVey, who has the authority to hire and fire them. The program directors had authority to engage or terminate the employees within their individual programs.

Patterson began working for Warren in 1962. During his employment, he received several promotions, including director of the transportation program in 1975. His responsibilities included hiring and training employees, writing grants for transportation, and overseeing

and coordinating the transportation program. Patterson, black, always received favorable evaluations from McVey even though he believed she disliked him because he interracially married.

During 1985, Mary Connell was employed by Warren as a living skills trainer. The program director of her unit was Dugan Strom. Patterson's responsibilities included occasionally contacting Connell in order to coordinate transportation for employees within her unit. On April 11 and 15, 1985, Connell received telephone calls from Patterson in which he asked her if he could call her at home. Even though she claimed to be upset or disturbed by these alleged overtures, she did not request disciplinary action be taken against Patterson. On April 18, Connell became concerned about a conversation with Patterson in which he asked her to go with him for a ride. On April 19, Connell requested Strom discuss these incidents with Patterson. Strom and Patterson were equivalents, so the only disciplinary action Strom could take was to contact McVey, which Connell requested Strom not do. After additional alleged incidents occurred, Connell then decided to initiate formal action with McVey.

McVey met with Patterson, advised him that she had complaints by way of documentation that he sexually harassed Connell. McVey told Patterson he would therefore have to resign his position or be fired. He was given three hours to vacate his job. McVey found Connell's complaints believable because of her truthful reputation. McVey experienced similar situations in the past with Patterson and believed that Patterson had not been truthful.

Patterson lists several factors which he contends undermine Connell's credibility and the reliability of her complaints. These factors include: (1) Connell did not appear to be offended by Patterson's conduct or remarks at the time they were made, which was evidenced by the fact that Connell failed to formally complain about Patterson for a considerable time; (2) Connell had been personally involved in litigation concerning deceptive practice; (3) Connell prepared her hearing testimony with the assistance and coaching of Warren's attorney, even though she initially denied the same; (4) Connell failed to produce a diary of the dates when Patterson allegedly engaged in harassing Connell, even though she repeatedly referred to this diary during her testimony; and (5) McVey was predisposed and biased towards Patterson because she did not approve of his interracial marriage.

Patterson filed a complaint with the Illinois Department of Human Rights shortly following his termination from his employment with Warren. The Department referred the matter to the Commission, alleging that Warren discriminated against Patterson on the basis of

race and gender. An administrative law judge found in favor of Patterson. That decision was affirmed by a three-member panel of the Commission.

Warren suggests the findings of the administrative law judge and the Commission were erroneous. We disagree. The judge found Patterson proved his case by a preponderance of the evidence in that he established Warren's explanation was purely pretextual, which was sufficient to find against Warren under *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 545 N.E.2d 684.

■ ■ This case originated under the disparate treatment theory, which requires proof directly or indirectly of an employer's discriminatory motive. To prove the motive indirectly, a complainant may establish discrimination by inference. (*Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.) Every complainant must prove a *prima facie* case of discrimination by a preponderance of the evidence. In order to do so, the complainant must show the following: (1) he is a member of a group protected by the law; (2) he was treated in a certain manner by the employer; and (3) he was treated differently than similarly situated employees who are not members of the protected group. (*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817.) Thereafter, the employer must sufficiently articulate legitimate nondiscriminatory reasons that it undertook to terminate the complainant. Finally, the complainant must then prove by a preponderance of the evidence that he was the subject of intentional discrimination. *Clark Oil & Refining Corp. v. Golden* (1983), 114 Ill. App. 3d 300, 448 N.E.2d 958.

Patterson established that he was a black male who met his employer's expectations, was forced to resign, and was replaced by a white male. Warren responded by stating Patterson was terminated because it was firmly believed that he sexually harassed a fellow employee. Patterson then established by direct and indirect evidence that Warren intentionally discriminated against him through the following evidence: (1) there was an insufficient investigation into the complaints; (2) he did not receive a hearing regarding his termination; and (3) he did not receive an opportunity to present evidence or explanation of his version. In addition, he established sufficient inference of the continued bias of McVey to the judge's satisfaction.

■ ■ In order to indirectly show a pretextual explanation, a claimant must show that the explanation was not worthy of belief. (*Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.) A decision such as this is better made

by a trial judge, who hears the evidence and observes the demeanor of the witnesses. A reviewing court should not overturn a decision of the Commission unless that decision is contrary to the manifest weight of the evidence. (*K mart Corp. v. Human Rights Comm'n* (1984), 129 Ill. App. 3d 842, 473 N.E.2d 73.) There is a legal presumption that the Commission's decision is correct, unless it is contrary to the manifest weight of the evidence. (*Department of Corrections v. Clay* (1985), 135 Ill. App. 3d 710, 481 N.E.2d 1080.) A decision is against the manifest weight of the evidence when, after reviewing the evidence in the light most favorable to the administrative agency, the reviewing court determines that no rational trier of fact could agree with the agency's decision because an opposite conclusion is clearly warranted. (*Quincy School District No. 172 v. Human Rights Comm'n* (1990), 197 Ill. App. 3d 694, 555 N.E.2d 21.) The trial judge is in a superior position to make such factual determinations. He is in a better position to resolve evidentiary and factual conflicts. Finally, the trial judge is in the best position to analyze the weight of the evidence and the credibility of the witnesses who appear before him at trial.

If the record contains any evidence to support the Commission's decision, the decision should be upheld. It is not the function or duty of a reviewing court to retry the case, reanalyze the facts and evidence, or substitute its judgment for that of the presiding judge. (*Quincy School District No. 172 v. Human Rights Comm'n* (1990), 197 Ill. App. 3d 694, 555 N.E.2d 21.) There is ample evidence in this record to support the findings of the administrative law judge. The findings are not against the manifest weight of the evidence.

Therefore, based on the foregoing analysis and reasoning, the findings and decision of the Illinois Human Rights Commission are hereby affirmed.

Affirmed.

STOUDER, P.J., and HAASE, J., concur.